UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>DOMINIC RAMIREZ,<br><br>    Defendant. | Case No. 18-20676<br>Honorable Laurie J. Michelson |

**ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE [39]**

Dominic Ramirez has served approximately 85 percent of his 42-month prison sentence for being a felon in possession of a firearm. He will be eligible for home confinement in a matter of weeks. His prison facility has numerous positive cases of COVID-19. Ramirez is at heightened risk for severe illness due to his morbid obesity combined with hypertension and sleep apnea. Against this backdrop, Ramirez seeks to end his incarceration and obtain compassionate release under 18 U.S.C. § 3582(c)(1)(A). Finding the requirements for compassionate release to be satisfied, Ramirez's motion is GRANTED.

**I.**

On October 13, 2016, Ramirez brought a firearm into a residence in Flint, Michigan where he was staying with others, including three children. (ECF No. 22, PageID.54; ECF No. 42, PageID.178.) That same day, a search warrant was executed at the residence. The firearm was located between the cushions on a couch in the living room. (*Id*.) Ramirez was initially charged in a sealed criminal complaint with one count of being a felon in possession of a firearm. (ECF No. 1.) He had his initial appearance on August 14, 2018 and consented to detention. (ECF No. 8.)

Two months later an information was filed charging Ramirez with one count of possession of a firearm by a prohibited person. (ECF No. 13.) Ramirez pled guilty and was sentenced to 42 months' imprisonment on November 13, 2019. (ECF No. 33.)

Ramirez, who is almost 39 years old, is presently serving his sentence at the Greenville Federal Correctional Institution. (ECF No. 39, PageID.126.) His "projected release date" is June 9, 2021, and his "home detention eligibility date" is February 3, 2021. (ECF No. 39-2, PageID.138.) A September 15, 2020, Bureau of Prisons Progress Report indicates that Ramirez "is being submitted for a 91–120 day [Residential Reentry Center] placement," (ECF No. 39-11, PageID.157), but that placement has yet to occur. In terms of coronavirus cases, Greenville FCI is presently experiencing an outbreak with 74 positive inmate and 15 positive staff cases. *See COVID-19*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 19, 2021)

Ramirez believes that the combination of his morbid obesity and hypertension makes his health risk from COVID-19 "dire." (ECF No. 39, PageID.129.) At the time of sentencing, the 5' 11" Ramirez weighed 400 pounds. (Presentence Report, ¶ 59.) Many months later, during a July 2020 prison medical visit, Ramirez still weighed 397.8 pounds. (ECF No. 39-6, PageID.147.) His present motion identifies his weight as 380 pounds. (ECF No. 39, PageID.129). His body mass index he says, is approximately 52.9, which is considered morbidly obese. (*Id*. (citing https://webmd.com/bmi)) The Centers for Disease Control and Prevention (CDC) have identified persons with certain medical conditions, regardless of age, as being at increased risk for severe illness from COVID-19, including those with severe obesity, defined as having a BMI of 40 or higher. *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://perma.cc/Y5NV-NB5P. Thus, Ramirez is now seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 39.)

2

While acknowledging Ramirez's health risks, the government does not believe that Ramirez's release is warranted under the section 3553(a) factors. (ECF No. 42.) In addition to the briefing, the parties provided additional information during the oral argument on January 15, 2021.

## II.

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception to this rule is compassionate release. The compassionate release statute allows the Court to reduce a defendant's sentence if it finds, after a defendant has exhausted his administrative rights, that "extraordinary and compelling reasons" warrant a reduction; that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and that the § 3553(a) factors, to the extent they apply, support a reduction. 18 U.S.C. § 3582(c)(1)(A). "In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020).

### A.

The statutory exhaustion requirement is mandatory. *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). On August 8, 2020, Ramirez submitted a request for compassionate release to the warden on a "Request for Administrative Remedy" form. (ECF No. 39-4, PageID.144.) The warden's response simply directed Ramirez to submit a different form. He did not address the substance of the request or take any other action within 30 days of receipt of the request. The government acknowledges that Ramirez has adequately exhausted his administrative remedies. (ECF No. 42, PageID.165, 173.)

**B.**

Ramirez must demonstrate "extraordinary and compelling reasons" to justify his early release.

**1.**

The term "extraordinary and compelling" is not defined in the statute; instead, another provision, 28 U.S.C. § 994(t), directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons . . . including the criteria to be applied and a list of specific examples." The Sentencing Commission has done so in the commentary to the applicable policy statement, USSG § 1B1.13, setting forth four specific categories. USSG § 1B1.13, comment n.1. But this policy statement and accompanying commentary have not been updated since the passage of the First Step Act of 2018, which amended § 3582(c)(1)(A) to permit defendants to file motions for compassionate release on their own behalf. As a result, the policy statement still provides that a sentence reduction may be granted only on the Bureau of Prison's motion. *See* USSG § 1B1.13, comment n.4. Thus, the Sixth Circuit has now clearly held "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions. *United States v. Elias*, No. 2021 U.S. App. LEXIS 251, at *5–6 (6th Cir. Jan. 6, 2021). "And, in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Id*.

In determining this definition during the unprecedent coronavirus pandemic, this Court, as Ramirez points out, has considered whether defendants had "severe medical conditions" which placed them at high risk of severe illness in the event of a coronavirus infection, were housed at a facility with confirmed cases, and had served "a large majority of their sentences." *United States*

4

*v. Nazzal*, No. 10-20392, 2020 WL 3077948, at *3 (E.D. Mich. June 10, 2020). Post-*Jones* and *Elias*, these remain appropriate considerations.

**2.**

Ramirez is morbidly obese. And while he is not the first defendant to ask this Court for a sentence reduction based on obesity, he is the first with a body mass index over 50. The CDC advises that individuals who are severely obese (BMI of 40 or greater) are among those with the "strongest and most consistent evidence" of severe illness from COVID-19. *Evidence used to update the list of underlying medical conditions that increase a person's risk of severe illness from COVID-19*, Centers for Disease Control and Prevention, https://perma.cc/D9ZH-F6KF (last updated Nov. 2, 2020). Courts have ruled that such obesity is an "extraordinary and compelling" reason warranting compassionate release. *See, e.g.*, *United States v. White*, No. 13-20653-1, 2020 U.S. Dist. LEXIS 88542 (E.D. Mich. May 20, 2020) (granting compassionate release to obese defendant with hypertension who had served more than 80 percent of his sentence); *United States v. Readus*, No. 16-20827-1, 2020 U.S. Dist. LEXIS 89351 (E.D. Mich. May 21, 2020) (granting compassionate release to defendant with severe obesity, obstructive sleep apnea, hypertension, and prediabetes).

Ramirez is also housed in a facility that, despite the BOP's significant efforts to try to manage the virus in its facilities (ECF No. 42, PageID.165–167), is presently experiencing a significant increase in the number of inmates and employees infected with coronavirus. Rounding out the *Nazzal* factors, Ramirez, detained since August 14, 2018, has served a large majority of his 42-month sentence. Indeed, Ramirez is eligible to be released to home confinement or a residential reentry center in just a few weeks, on February 3rd. And, at the outer end, his projected release date is only a few months away, in June 2021.

Notably, the "government agrees that Ramirez's circumstances qualify as 'extraordinary and compelling reasons.'" (ECF No. 42, PageID.175.) "Given the heightened risk that Covid-19 poses to someone with severe obesity," says the government, "Ramirez has satisfied the initial eligibility criteria for release under § 3582(c)(1)(A)." (*Id*.). The Court accepts this concession. *See United States v. Wren*, No. 10-cr-20137, 2020 U.S. Dist. LEXIS 156155 (E.D. Mich. Aug. 28, 2020) (granting compassionate release where the government conceded that defendant's severe obesity constituted extraordinary and compelling circumstances); *United States v. Powers*, No. 14-cr-20449, 2020 U.S. Dist. LEXIS 154805 (E.D. Mich. Aug. 26, 2020) (denying compassionate release where government did not concede that defendant's obesity and high blood pressure constituted extraordinary and compelling circumstances, defendant had contracted COVID-19 but was asymptomatic, and had served only one-third of his sentence).

## C.

The government does, however, oppose Ramirez's release. The government provides additional medical records that indicate Ramirez recently had and recovered from COVID-19, having been asymptomatic. (ECF No. 42, PageID.176.) The government believes Ramirez may thus have immunity that will protect him until he is vaccinated. (*Id*.) And this, continues the government, makes Ramirez's reasons for release "less extraordinary and less compelling" such that "his diminished rationale for release is unable to overcome the § 3553(a) factors that counsel against granting his motion." (ECF No. 42, PageID.176.)

The government provides a compelling argument. Ramirez has amassed enough criminal history points to be placed in the highest criminal-history category, including drug and assault offenses. With this history, it is even more dangerous for him to possess a firearm, especially in a home where three young children were living and additional firearms and drug paraphernalia were

6

located. The government further points out that Ramirez has already received a downward variance on his sentence (ECF No. 42, PageID.181) and has not served much of it at a BOP facility, such that he would benefit from some time at a residential reentry center.

Ramirez paints a different picture. Much of his criminal history is attributable to his substance abuse problems. And many of his criminal history points come from driving under the influence. He will be receiving necessary treatment as part of his supervised release. Ramirez says his "only arguably 'violent' offenses are misdemeanors—an attempted felonious assault from 2003 (PSR ¶ 34) and an assault and battery from 2013 (PSR ¶ 42)." (ECF No. 39, PageID.133.) This overlooks, however, that he was charged with another assault following a fight in 2006 and pled to disorderly conduct. (PSR ¶ 38.) But it is true that Ramirez's history has not involved significant physical violence or injuries. Prior to the current offense, he had not been sentenced to more than six months in jail on any underlying conviction or more than 300 days on a probation violation. And, Ramirez says, there is no suggestion he used or threatened to use the gun in the underlying offense. (ECF No. 39, PageID.133.) He also confessed and accepted responsibility.

This has been the longest period of time Ramirez has been in prison and separated from his family. He has a very supportive mother and his reentry plan includes residing with her. She has provided a letter from the owner of Taco King, LLC offering Ramirez a full-time position as a cook upon his release from prison, as well as an email from the owner and operator of an asphalt repair company also offering Ramirez a job upon his release. (ECF No. 39-9, PageID.151–152.)

Ramirez has other positive rehabilitation efforts. He has taken numerous educational, vocational, and lifestyle courses. (ECF No. 39-10, PageID.153–154, 156.) And he has no disciplinary infractions while incarcerated at Greenville. (*Id.* at PageID.156.)

This case highlights some of the challenges the courts face in dealing with requests for compassionate release during the coronavirus pandemic. The defendant has underlying medical conditions that place him at heightened risk for serious illness from the virus. His BOP facility, despite significant efforts, has a growing number of positive COVID cases. According to results from a November test, Ramirez tested positive for COVID-19. Assuming the accuracy of this test result, Ramirez did not become seriously ill after contracting COVID-19. Whether he is subject to re-infection and, if so, more serious illness the second time, remain relative unknowns. *See e.g.*, *Clinical Questions about COVID-19: Questions and Answers*, Centers for Disease Control and Prevention, https://perma.cc/HK3T-HMFT. Also unknown is when he might receive a COVID vaccination. (ECF No. 42, PageID.172.) But one thing is known. Ramirez does not have much time remaining on his sentence. Again, he is eligible for release within weeks. *See United States v. Kincaid*, 805 F. App'x 394, 395–96 (6th Cir. 2020) (approving a district court's consideration of the percentage of time served in its evaluation of the § 3553(a) factors in a compassionate release motion).

Thus, considering Ramirez's history and characteristics and the nature and circumstances of the underlying offense, the Court believes that the time Ramirez has spent in prison, combined with two more weeks in quarantine plus a period of supervised release that includes some additional home confinement, is sufficient to promote respect for the law, protect the public from future crimes of the defendant, and provide just punishment and deterrence. Especially considering the courses Ramirez has taken, his behavior while in jail, the support from his mother, and his current opportunities for employment, the Court finds that the continuing risk to Ramirez's health outweighs any additional benefits he would receive from serving out the remaining, relatively small percentage of his sentence. *See, e.g.*, *United States v. Fields*, No. 12-cr-20274, 2020 U.S.

Dist. LEXIS 229692 (E.D. Mich. Dec. 8, 2020) (granting compassionate release to an overweight defendant who had hypertension and diabetes, had served 60% of a 15-year sentence, was detained in a facility with significant COVID-positive cases, and had himself recovered from the virus after being asymptomatic).

### III.

Thus, for the reasons stated, Ramirez's motion for compassionate release (ECF No. 39) is GRANTED. His prison sentence will be reduced to time served. Ramirez is to be immediately placed into quarantine and released from BOP custody 14 days after the entry of this order.

IT IS FURTHER ORDERED that, upon his release from custody, Ramirez is to reside with his mother at the address provided to the Court's Probation Department. Ramirez will also begin his three-year term of supervised release, as outlined by the November 14, 2019 Judgment. (ECF No. 33.) For the first three months, Ramirez shall participate in the Location Monitoring Program, utilizing technology as directed by the probation officer, and abide by all requirements of the program. The Defendant is restricted to his residence at all times, except for employment; education; religious services; substance abuse or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as preapproved by the probation officer (Home Detention). The Court waives the fees of the program. There is to be no alcohol on the premises during this period of home detention.

IT IS SO ORDERED.

Dated: January 19, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE